IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**MATTHEW HUSKEY**                                                                                    **PLAINTIFF**

v.                                                                                    Civil No. 5:21-cv-54-BWR

**DAMEYON BONNER and**
**KEENAN SHERMAN**                                                                                **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [58]

BEFORE THE COURT is a verified Complaint filed *pro se* and *in forma pauperis* by Plaintiff Matthew Huskey, a postconviction prisoner in the custody of the Mississippi Department of Corrections ("MDOC"). For purposes of the Prison Litigation Reform Act ("PLRA"), the Court notes that Huskey was incarcerated when he filed this suit. Defendant correctional officers Lieutenant Dameyon Bonner and Sergeant Keenan Sherman have filed a Motion for Summary Judgment [58] and Memorandum [59] alleging that Huskey's Complaint must be dismissed because he failed to exhaust administrative remedies as required by the PLRA and cannot show that Defendants acted with deliberate indifference to his health and safety. Huskey filed a Response [66] and Supplemental Response [68]. Defendants filed a Rebuttal [69].

Having considered these submissions, the record, and relevant law, the Court finds that Defendants' Motion for Summary Judgment should be denied. Huskey exhausted administrative remedies because his request for an administrative remedy was improperly rejected during the screening phase of MDOC's Administrative

1

Remedy Program ("ARP"), and material factual disputes preclude summary judgment on the merits.

## I. BACKGROUND

### A. Procedural History

At the time of the events alleged in the Complaint, Huskey was incarcerated at the Wilkinson County Correctional Facility ("WCCF") where Lieutenant Bonner and Sergeant Sherman were correctional officers. Compl. [1] at 1. Defendants do not dispute that on March 3, 2021, during a "shower call," Huskey "was assaulted by other inmates on the long-term segregation unit." Defs.' Mem. [59] at 1-2. There is no dispute that this occurred after inmate Derrick Hill obtained Lieutenant Bonner's shower keys. *Id.* The inmates who assaulted Huskey were Hill, Carderious Day, and Gilmore Christian. Aff. of Bonner [58-5] at 1-2; Aff. of Sherman [58-6] at 2.

The Clerk of Court received Plaintiff's Complaint [1] on June 1, 2021. The Complaint advanced claims through 42 U.S.C. § 1983 against Lieutenant Bonner and Sergeant Sherman for alleged violation of rights guaranteed by the Eighth Amendment of the United States Constitution and Mississippi state law claims for negligence. The Complaint requests money damages. Compl. [1] at 10. Huskey stated in the Complaint that he exhausted MDOC's ARP before filing suit because "he followed the Grievance Policy 20-08-02 that has been approved by MDOC," and it "became unavailable to him when Mr. R. Pennington rejected the ARP and the appeal." *Id.* at 12.

The Court held an omnibus hearing on January 5, 2023 to allow Huskey an opportunity to clarify his claims and to facilitate the exchange of discovery between Huskey and Defendants. Tr. [57] at 1-42. Defendants provided Huskey with discovery documents, including ARP records and medical records. *Id.* at 38. A deadline was set for dispositive motions. Order [55] at 4.

Defendants timely filed their Motion for Summary Judgment [58] arguing that Huskey's claims must be dismissed because he did not complete the two-step ARP process before filing suit and could not show that Lieutenant Bonner and Sergeant Sherman were deliberately indifferent to his health or safety. Defs.' Mem. [59] at 2, 8-14. Huskey filed Motions [56] [62] for discovery but did not file a response to the Motion for Summary Judgment. The Court denied without prejudice Huskey's requests for further merits-based discovery until the issue of exhaustion of administrative remedies was resolved. Order [65] at 3. The Court ordered Huskey to address Defendants' argument that he failed to exhaust administrative remedies by filing a response to Defendants' Motion for Summary Judgment. *Id.*

Huskey responded by asserting that he followed the ARP procedures, and the ARP became unavailable to him when MDOC's Statewide ARP Director Richard Pennington would not accept his request for an administrative remedy into the ARP process. Pl.'s Resp. [66-1] at 1, Pl.'s Supp. Resp. [68] at 3. Defendants filed a Rebuttal, emphasizing that this was an admission by Huskey that he did not complete the two-step ARP process. Defs.' Mem. [59] at 3-5, 8. Defendants assert that Huskey was

3

required to file a corrected grievance to be accepted into the ARP process but failed to follow the ARP procedures. *Id.* at 4.

### B. Facts Pertinent to Exhaustion of Administrative Remedies

The facts pertinent to whether Huskey exhausted administrative remedies are mostly not disputed. On March 8, 2021, Huskey submitted a request for an administrative remedy to the ARP complaining that he had been assaulted by other inmates on his housing unit in an incident occurring on March 3, 2021. Grievance [1-1], Tr. [57] at 18; Aff. of Williams, ARP Coordinator [58-1] at 2. As relief, Huskey requested that Lieutenant Bonner "be charged with my assault" and required to pay "$50,000.00 for pain and suffering." Grievance [1-1]. On March 14, 2021, Huskey submitted a second request for an administrative remedy about the same incident and requested "[t]o have the incident of March 3, 2021 investigated and if found to be at fault, to have charges pressed against Lt. Bonner." Grievance File [58-1] at 7; Tr. [57] at 18. The March 8 and March 14 requests were assigned the grievance number WCCF-21-271. Aff. of Williams, ARP Coordinator [58-1] at 2.

On April 23, 2021, Statewide ARP Director Pennington signed a form rejecting WCCF-21-271 because the "relief is beyond the power of the ARP to grant." Grievance File [58-1] at 4. Huskey signed an acknowledgment of receipt of the rejection that is dated May 3, 2021. *Id.* at 8. He claims, however, that he did not receive the rejection until May 5, 2021. Compl. [1] at 12.

Huskey asserts that he presented an appeal of the rejection of his grievance on May 10, 2021, within five days of May 5, 2021, which Defendants acknowledge "would

make a May 10, 2021 appeal timely." Defs.' Mem. [59] at 10. Huskey attached a document to his Complaint entitled "Inmate Request Form" that is addressed to "Mrs. Tina Bolden/Grievance Coordinator (EMCF)" stating that he was "appealing the rejection as stated in Grievance Policy 20-08-01. Please submit this appeal to Mr. R. Pennington or the appropriate authority." Letter [1-3], Tr. [57] at 20. Defendants assert that the document provided by Huskey as a purported appeal "neither appears in the ARP record nor does it bear the stamp confirming that it was received by the ARP program." Defs.' Mem. [59] at 10. Nevertheless, there is no dispute that in a letter dated May 11, 2021 from Statewide ARP Director Pennington to Huskey, Pennington writes: "I am in receipt of your request for Administrative Remedy concerning WCCF-21-271. It has been noted that you have a previously rejected ARP concerning the same issue. Therefore, since this matter has already been rejected because ARP has no authority to discipline staff or give an offender money, this particular request will not be processed." Letter [1-5].

On May 18, 2021, Huskey signed his Complaint [1], which the Clerk of Court received and filed on June 1, 2021.

### C. Facts Pertinent to the Merits

According to Defendants, the circumstances underlying the attack on Huskey are as follows:

> Inmate Derrick Hill indicated that he needed to use the restroom. When Hill exited the shower, Bonner observed that he was armed with a knife. Hill placed the knife to Bonner's abdomen and demanded his shower keys. Fearing for his safety, Bonner handed over his keys.

5

> Bonner and the other officers then exited the dayroom for their safety and initiated a "code black," or emergency situation, so that the response team could intervene to secure the situation.
>
> After obtaining the keys, Hill unlocked the shower doors for inmates Day and Christian, and they then entered Huskey's shower and began assaulting him.

Defs.' Mem. [59] at 2 (internal citations omitted).

Defendants have submitted the Affidavit of Lieutenant Bonner who avers that upon opening Hill's shower door, he "observed that Hill was armed with a knife. Hill placed a weapon by my abdomen and directed that I give him the shower keys attached to my belt." Aff. of Bonner [58-5] at 2. Defendants have submitted the Affidavit of Sergeant Sherman who attests that "I observed inmate Derrick Hill make a request to Dameyon Bonner to be removed from the shower so that he could use the restroom. After Lieutenant Bonner opened the door, I observed Hill threaten Bonner with a knife and demand that Bonner give him the shower keys." Aff. of Sherman [58-6] at 2.

According to Huskey, while a knife was used in the attack, Hill did not have a knife when he exited the shower. Tr. [57] at 10-11, 34-36. Huskey maintains that Hill had only the shower keys in his hand, and "all three inmates came and unlocked my shower, and the inmate that got the keys, swung them and hit me on the left elbow. Then all three pulled me out of the shower and started stabbing me in the back and shoulders and hitting me in the head." Compl. [1] at 9. Huskey believes that the attack was instigated by his comment to

> the nightshift officer, after he got through feeding, I asked him to leave my tray hole open so I could watch the news, but he said that he had to

6

> lock it. And I noticed he didn't lock – he left a few tray flaps –tray holes open. So I asked him, I said, well, tell me this. I said, how can I get on that favoritism list, you know, so I can keep my tray hole open?
>
> The dude – the inmate next door to me, in the cell next to me, his tray box was open, all right? So the officer, he locked my tray flap back, then stepped next door over there and locked his. And he told that inmate that I had told on him that his – that his tray flap – that it was left open – he left it open.
>
> So after the officer left, the inmate next to me started talking to the inmate next to him and the one on the other side of me.

Tr. [57] at 8.

The following morning, Huskey witnessed Defendants going from cell to cell talking to the inmates who would later attack him. Pl.'s Resp. [63] at 2. Lieutenant Bonner removed Day, Gilmore, Hill, and Huskey from their holding cells and transported them to the shower area. Aff. of Bonner [58-5] at 1. Once each inmate was secured behind a locked door, the handcuffs were removed to allow them to shower. *Id.* Huskey asserts that Lieutenant Bonner failed to re-handcuff Hill before allowing him to exit the shower. Tr. [57] at 10. Huskey testified that Lieutenant Bonner

> had the inmate in the shower beside me turned around and backed up to the tray hole, so to put the cuffs on him. But as soon as the inmate stood up, he had the cuffs in his hand. They wasn't secured on his hand. They – he had them in his hand. Lieutenant Bonner opened the door for the shower, and the inmate stepped out and stopped right there at Bonner – Lieutenant Bonner there. And Lieutenant Bonner took the keys off his waist and handed it to him.

Tr. [57] at 10.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fact disputes are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). When a movant carries his initial burden, the burden shifts to the nonmovant to show summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992).

The Court must view summary judgment evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court considers the full record including the pleadings, depositions, interrogatory answers, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Courts employ summary judgment cautiously in the context of *pro se* inmate litigation. *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980). They must "guard

against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Id.* at 311; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (stating *pro se* documents should be liberally construed). "Indigent prisoners are hampered in their access to the proof necessary to ward off summary judgment." *Murrell*, 615 F.2d at 310. Accordingly, "on summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit." *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003). In general, a complaint is verified by "a signed declaration under penalty of perjury that 'the foregoing is true and correct.'" *Id.* Allegations in a "verified complaint and other verified pleadings," as well as a prisoner's testimony at a *Spears* hearing, constitute competent summary judgment evidence. *Falcon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (citing *Hart*, 343 F.3d at 765).

### B. Defendants Have Not Proven That Huskey Failed to Exhaust Administrative Remedies

1. The PLRA's administrative exhaustion requirement

"The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The PLRA provides that an inmate may not sue under federal law about prison conditions until exhausting available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion is an affirmative defense, and the burden is on Defendants to demonstrate that Plaintiff failed to exhaust available administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Defendants "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

The PLRA mandates proper exhaustion, meaning that "prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself." *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (citing 42 U.S.C. § 1997e(a)) (quoting *Jones*, 549 U.S. at 218). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford,* 548 U.S. at 83-84. A properly exhausted claim is one that has "complete[d] the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their [sic] complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The PLRA contains "one textual exception to its otherwise stringent exhaustion requirement: availability. Inmates who fail to exhaust can proceed in

10

court by showing that administrative remedies were not 'available.'" *Valentine v. Collier*, 978 F.3d 154, 160 (5th Cir. 2020). There are three circumstances under which "an administrative remedy, although officially on the books, is not capable of use to obtain relief": (1) when an administrative procedure operates as a "simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use," such that no ordinary prisoner can discern or navigate the mechanism that exists; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642-43 (2016); *see Valentine*, 956 F.3d at 804. "[W]hile it is a question of law whether administrative remedies qualify as being 'available' under 42 U.S.C. § 1997e(a), availability may sometimes turn on questions of fact." *Dillon*, 596 F.3d at 266.

   2. MDOC's two-step ARP

Mississippi law authorizes MDOC to promulgate an "administrative review procedure at each of its correctional facilities." Miss. Code Ann. § 47-5-801. MDOC has established a "formal two-step process for handling inmate grievances." *Yankton v. Epps*, 652 F. App'x 242, 245 (5th Cir. 2016).

> An inmate must file a grievance within 30 days of the complained-of incident. The grievance is reviewed by the prison's legal-claims adjudicator and, if there is an adverse response at the first step, the inmate may appeal to step two. If the inmate disagrees with the step two response, he may sue.

*Wheater v. Shaw*, 719 F. App'x 367, 369-70 (5th Cir. 2018).

11

Defendants have provided Policy 20-08-01 [58-2], which is an MDOC grievance policy dated September 2019, as well as the 2016 version of the Inmate Handbook containing the grievance procedures at Chapter VIII [58-3]. Pertinent to this case is the language regarding the screening process that a request for an administrative remedy must pass before being accepted into the ARP process. The ARP Director screens requests "prior to assignment to the First Step." MDOC Policy 20-08-01 [58-2] at 1; Inmate Handbook, Ch. VIII [58-3] at 1. An inmate's request for an administrative remedy may be rejected at screening if it requests relief that is beyond the power of MDOC to grant. *Id.*

The text of the 2019 MDOC Policy 20-08-01 and Chapter VIII of the 2016 Inmate Handbook differ regarding how an inmate must proceed if his request for an administrative remedy is rejected at screening and not accepted into the ARP process. MDOC Policy 20-08-01 provides that if an inmate's request for an administrative remedy is rejected, "[t]he offender will then have five days from the date the rejection memo is received to appeal this rejection through channels or to resubmit his corrected complaint (beginning with the First Step)." [58-2] at 4. Chapter VIII of the 2016 Inmate Handbook does not state that a rejection of a request for an administrative remedy at screening may be appealed. It provides that "[i]f a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance." [58-3] at 18.

3. <u>Huskey's request for an administrative remedy was improperly rejected at screening</u>

Huskey submitted a request for an administrative remedy on March 8, 2021 complaining that he had been assaulted by other inmates and requesting that Officer Bonner be criminally charged and required to pay him for pain and suffering. Huskey submitted a second request on March 14, 2021 about the same incident and testified at the omnibus hearing that he "changed the relief." [57] at 19. Huskey's March 14, 2021 request sought "[t]o have the incident of March 3, 2021 investigated and if found to be at fault, to have charges pressed against Lt. Bonner." Grievance [58-1] at 7; Tr. [57] at 18. Huskey testified that "on the first ARP, I had asked for money damages. But on the second one, I had asked to have the incident investigated." Tr. [57] at 21. Huskey explained that he removed the request for money damages because he

> read cases to where they say if you – if you ask for money damages, they don't supply money damages, then, you know, you've got to resubmit your ARP with a different relief. But, like I said, neither in the handbook, MDOC handbook, nor the MDOC grievance policy does it say that. But I did – I did – like I say, I did submit a new ARP on March the 14th, with a different relief.

*Id.* at 26.

According to the Affidavit of ARP Coordinator Janice Williams, requesting an investigation was a proper request for an administrative remedy. Her Affidavit provides that

> if Mr. Huskey had timely submitted a corrected grievance seeking relief capable of being addressed by the ARP, his grievance would have been accepted into the ARP process and sent to the appropriate official for a first step response. For instance, instead of requesting a criminal prosecution or seeking monetary compensation, *Mr. Huskey could have requested an investigation of the subject incident* to determine whether

13

> MDOC policy had been violated, he could have requested to be moved, he could have requested to 'red tag' his assailants, or he could have requested any necessary medical attention.

Aff. of Williams, ARP Coordinator [58-1] at 3 (emphasis added).

Huskey did request an investigation. This Court has twice found that it was error to prohibit an inmate from participating in MDOC's ARP "on the basis that some of the relief he sought was beyond the power of the MDOC to grant." *Bell v. Mgmt. & Training Corp.*, No. 5:16-cv-39-DCB-MTP, 2017 WL 6060885, at *4 (S.D. Miss. Dec. 7, 2017) (relying on *Berry v. Wexford Health Sources*, No. 3:14-cv-665-CWR-FKB, 2016 WL 4030934, at *2 (S.D. Miss. July 26, 2016)). That Huskey's March 14, 2021 grievance also contained a request that MDOC argues was beyond the power of the ARP to grant did not obviate the portion of the request asking for relief within the power of the ARP to grant. Huskey exhausted administrative remedies because his request for an administrative remedy was improperly rejected at screening and not allowed into MDOC's ARP process. *See Yankton v. Epps*, 652 F. App'x 242, 247 (5th Cir. 2016). Defendants rely on *Lewis v. Doe, I*, as support for the opposite conclusion, but *Lewis* is distinguishable because there, the inmate "chose to seek *only* relief that the ARP could not provide." 840 F. App'x 785 (5th Cir. 2021) (emphasis added).

### C. Material Issues of Disputed Fact Preclude Summary Judgment on the Merits

Huskey claims that Lieutenant Bonner conspired with the inmates who attacked him and that his "giving the keys to the inmate constituted deliberate indifference to [his] safety and contributed to and proximately caused the stabbing and beating that

14

plaintiff received . . . ." Compl. [1] at 10. According to Defendants' version of events, Hill was armed with a knife and obtained the shower keys from Lieutenant Bonner through threat of force. Under Huskey's version of events, Lieutenant Bonner informed Hill that Huskey had snitched on the inmates whose tray flaps were open, Hill was not armed with a knife, and Lieutenant Bonner voluntarily gave Hill the shower keys.

Whether Huskey can sustain a claim depends on competing testimony and the resolution of material disputed fact. Huskey's testimony "may not be rejected merely because it is not supported by the movant's or its representatives' divergent statements." *Heinsohn v. Carabin & Shaw*, P.C., 832 F.3d 224, 245 (5th Cir. 2016). The conflicting evidence presented leaves the Court unable to reach a conclusion as a matter of law. Summary judgment on the merits is denied.

### III.   CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [58] is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 28th day of June 2023.

*s/ Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE